IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

URBANIQUE PRODUCTION, et al.,   )
   )
      Plaintiffs,   )
   )
v.   )   CIVIL ACTION NO. 2:03cv1150-ID
   )   (WO)
THE CITY OF MONTGOMERY, et al.,  )
   )
      Defendants.   )

## MEMORANDUM OPINION AND ORDER

## I.  INTRODUCTION

Before the court is a motion for summary judgment (Doc. No. 56), filed by

Defendants the City of Montgomery, Chris Wingard and J.T. Conway.  A brief and an

evidentiary submission accompany the motion.  (Doc. No. 57).  Plaintiffs Urbanique

Productions/Music Publishing, Cleveland Jointer and Xavier Jointer submitted a

memorandum in response and an evidentiary submission (Doc. No. 59) to which

Defendants filed a reply.[1]  (Doc. No. 60.)

This lawsuit arises from events pertaining to the warrant search of Jointer's and

Cleveland Jointer's residence from which Jointer and Cleveland Jointer also operated a

---

[1] The court refers to Conway and Wingard individually by last name and
collectively as the "Individual Defendants."  The term "Defendants" refers to all named
Defendants.  The court refers to Plaintiffs collectively as "Plaintiffs," and individually as
"Urbanique," "Cleveland Jointer," and "Jointer"; thus, all references herein to "Jointer"
refer to Xavier Jointer.

business called "Urbanique," Jointer's warrantless arrest at the scene of the search, the

dismissal in federal court of the criminal complaint against Jointer, and the subsequent

state prosecution of Jointer.  Plaintiffs bring Fourth Amendment and Fourteenth

Amendment claims, as enforced by 42 U.S.C. § 1983 ("§ 1983"), against Defendants for

unlawful search, false arrest, excessive force, malicious and retaliatory prosecution, and

race discrimination, as well as state law claims for municipal tort liability, false

imprisonment, assault and battery, and wantonness.  Defendants move for summary

judgment on all claims, and the Individual Defendants have raised qualified immunity as

a defense to the § 1983 constitutional claims.  After careful consideration of the

arguments of counsel, the relevant law and the record as a whole, the court finds that

summary judgment is due to be entered in Defendants' favor on Plaintiffs' constitutional

claims under § 1983 and that Plaintiffs' state law claims are due to be dismissed without

prejudice pursuant to 28 U.S.C. § 1367(c)(3).


## II.  JURISDICTION AND VENUE

The court properly exercises subject matter jurisdiction over this action, pursuant

to 28 U.S.C. § 1331 (federal question jurisdiction), 28 U.S.C. § 1343 (civil rights

jurisdiction), and 28 U.S.C. § 1367 (supplemental jurisdiction).  The parties do not

contest personal jurisdiction or venue, and the court finds adequate allegations of both.

## III.  STANDARD OF REVIEW

A court considering a motion for summary judgment must construe the evidence and make factual inferences in the light most favorable to the nonmoving party.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).  Summary judgment is entered only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  At this juncture, the court does not "weigh the evidence and determine the truth of the matter," but solely "determine[s] whether there is a genuine issue for trial."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986) (citations omitted).  This determination involves applying substantive law to the substantive facts that have been developed.  A dispute about a material fact is genuine if a reasonable jury could return a verdict for the nonmoving party, based on the applicable law in relation to the evidence developed.  See id. at 248; Barfield v. Brierton, 883 F.2d 923, 933 (11th Cir. 1989).

The moving party bears the initial burden of establishing the absence of a genuine issue of material fact.  See Celotex, 477 U.S. at 323.  "[T]he burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case."  Id. at 325.  The burden then shifts to the nonmoving party, which "must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  Summary judgment will not be entered unless

3

the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party.  See id. at 587.

## IV.  STATEMENT OF FACTS

Viewed in the light most favorable to Plaintiffs, the following facts constitute the facts material to resolution of the instant motion for summary judgment.[2]  Jointer co-owns a "business venture" with his brother, Cleveland Jointer.  (2nd Am. Compl. ¶ 5.)  The business venture is named "Urbanique."  (Id.)  Jointer describes the business as a "small recording studio, where we make music, engineer, mix and master audio."  (Jointer Aff. at 2 (unnumbered page) (Pls. Ex. A to Doc. No. 59)); (see also 2nd Am. Compl. ¶ 5.)  Jointer and Cleveland Jointer live and operate their business from their residence located at 3610 Castle Ridge Road.  (Jointer Aff. at 2-3.)

Jointer, Cleveland Jointer and Urbanique are Plaintiffs in this lawsuit.  Plaintiffs have sued Conway and Wingard, both of whom at all relevant times were police officers with the Montgomery Police Department ("MPD") assigned to the MPD's Special Operations Division, Narcotics and Intelligence Bureau ("Narcotics Bureau").  (2nd Am. Compl. ¶¶ 7-8.)  Conway and Wingard are sued in their individual capacities for

---

[2] When deciding a motion for summary judgment, the court views the facts and all reasonable inferences in favor of the nonmoving party.  See Celotex, 477 U.S. at 322. This statement of facts, thus, may not represent the actual facts.

monetary damages.  (Id. & damages demand at 7-10.)  The City of Montgomery also is a defendant.  (Id. ¶ 6.)

On July 17, 2003, Conway obtained a search warrant for the premises of 3610 Castle Ridge Road, Montgomery, Alabama.  (Search Warrant (Ex. 1 to Doc. No. 57).)  In support of the search warrant, Conway submitted an affidavit.  (Aff. in support of Search Warrant (Ex. 2 to Doc. No. 57).)  In his affidavit, Conway sets forth that, at that time, he had attained the rank of corporal and was a 15-year MPD veteran, having worked the past 10 of those years in the MPD's Narcotics Bureau.  The affidavit establishes that Conway, acting in an undercover capacity, made two controlled drug buys in July 2003.  (Id. at 1.)

On the first occasion, Conway met with two individuals identified only as "a white male" and "a white female" for the purpose of purchasing cocaine from them.  (Id.)  The white male was given $140.00 of MPD "buy money."  (Id.)  Before departing, the white male and the white female instructed Conway to meet them in 30 minutes at a local restaurant.  Law enforcement officials followed the white male and white female, who were traveling together in a single vehicle, to an apartment with an address of 3610 Castle Ridge Road.  Law enforcement officials observed the white female exit the vehicle and enter the apartment for "[a] short time," before returning to the vehicle.  (Id.)  Still under law enforcement surveillance, the two subjects met Conway and gave him approximately two grams of cocaine.  (Id.)

On the second occasion in July 2003, Conway met with the same white male at a local restaurant, again for the purpose of buying cocaine.  This time, the white male was

5

accompanied by an "unknown black male."[3]  (Id.)  Conway gave the white male $280.00

of MPD "buy money."  (Id.)  Unbeknownst to the white male and the black male, law

enforcement officials followed the vehicle in which the suspects were traveling to the

same apartment at 3610 Castle Ridge Road.  The black male exited the vehicle, entered

the apartment for "a short time" and returned to the vehicle.  (Id. at 2.)  These two

individuals were followed by law enforcement officials to the restaurant at which time the

white male exited his vehicle and got into the vehicle in which Conway was waiting.  The

white male gave Conway approximately five grams of "crack cocaine."  (Id.)  During this

second drug transaction, the white male informed Conway that his source had available

for sale ounce and kilogram quantities of cocaine.  (See id.)

Based on the information in Conway's affidavit, Patrick J. Murphy, in his capacity

as magistrate for the Municipal Court of the City of Montgomery, Alabama, signed the

search warrant, authorizing the "immediate search" of the residence at 3610 Castle Ridge

Road, for the following property:  "controlled substances, controlled substance

paraphernalia, drug related documents, monies, drug records," and other drug-related

items listed in an attachment to the warrant.  (Id.)  The search warrant was executed on

July 25, 2003, by Conway, Wingard and other members of the MPD Narcotics Bureau.

Seized from the apartment were the following:  approximately 331 grams of cocaine base;

61 grams of cocaine; two assault rifles; three handguns; $2185.00 in U.S. currency; and

---

[3] As discussed later in this opinion, the "black male" eventually was identified as
Jointer.

electronic equipment related to the business of Urbanique.  (Criminal Compl. at 2-3 (Ex. to Doc. No. 57)); (Jointer Aff. at 6. (Ex. to Doc. No. 59).)

Jointer was the only individual on the premises at 3610 Castle Ridge Road when Conway, Wingard and other officers executed the search warrant.  Jointer was arrested almost immediately after the officers entered the residence.  With his hands on the back of his head, Jointer walked a few steps into the living room where the officers surrounded him.  He was placed in handcuffs, "as an officer stood over [him] with his foot on the back of [his] neck."  (Jointer Aff. at 2.)  Wingard then shouted, "I got him," and "picked [Jointer] up off the floor and escorted [him] outside."  (Id.)  Wingard drove Jointer, who was accompanied in the back of the van by four other officers, to the MPD narcotics headquarters.  At the narcotics headquarters, Jointer's handcuffs were removed, and Jointer was asked general questions regarding his identity, his address and occupation.  Responding, Jointer informed Wingard that he and his brother (Cleveland Jointer) lived at 3610 Castle Ridge Road and that the two of them owned a "small recording studio."  (Id.)

While being booked, Jointer was informed by Wingard that a large quantity of cocaine and some firearms had just been found in Jointer's apartment.  Jointer denied knowledge of these items.  Jointer did not give a further statement, but rather signed a Miranda rights form, pleading the Fifth Amendment.  (Id. at 3.)  At that time, Wingard told Jointer that the "feds" would be notified.  (Id.)  Wingard handcuffed Jointer, with his hands in front, and Jointer was held for six to seven hours before he was transported by federal authorities to the Montgomery City Jail.  (Id.)

7

Subsequent to Jointer's arrest, but also on July 25, 2003, Wingard filed an affidavit in support of a criminal complaint against Jointer in the United States District Court for the Middle District of Alabama.  Based upon the affidavit "sworn" and "subscribed" before her, Honorable Vanzetta Penn McPherson, U.S. Magistrate Judge ("Magistrate Judge McPherson"), issued an arrest warrant for Jointer to answer a criminal complaint charging him with "knowingly and intentionally possess[ing] with intent to distribute 50 or more grams of cocaine base, a Schedule II Controlled Substance," in violation of 21 U.S.C. § 841(a)(1).[4]  (Criminal Compl. (Ex. to Doc. No. 57).)

The affidavit consists of two-and-a-half pages of double-spaced, typewritten letter-size paper.  (See id.)  Therein, Wingard identifies himself as a detective employed by the MPD for six years.  He describes the two drug buys, which Conway outlined in his affidavit in support of the search warrant.  Wingard's affidavit provides a few details not revealed in the search warrant affidavit.  Wingard specifies the exact dates upon which the buys occurred, July 15, 2003, and July 16, 2003.  As to the July 15 drug transaction, Wingard identifies the two sellers with whom Conway had contact as "Amanda Keller" and "Eric LNU" and reveals that Keller is the one whom the surveillance officers saw enter 3610 Castle Ridge Road.  (Id. at 1.)

---

[4] Wingard submitted the affidavit in compliance with Rule 5(b) of the Federal Rules of Criminal Procedure.  See Fed. R. Crim. P. 5(b) (requiring that, "[i]f a defendant is arrested without a warrant, a complaint meeting Rule 4(a)'s requirement of probable cause must be promptly filed in the district where the offense was allegedly committed").

Regarding the July 16 drug transaction, Wingard reveals that Conway was assisted by a MPD confidential informant and that "Eric LNU" is the individual who had direct contact with Conway concerning the purchase of cocaine and to whom Conway provided the buy money during the transaction.  Wingard attests that a "black male" was in the vehicle with "Eric LNU," but the affidavit reveals that Conway did not have contact with this "black male."  Rather, the "black male" remained in the vehicle, while Eric LNU walked across the parking lot and entered the back seat of the vehicle in which Conway was seated.  (Id. at 2.)

The affidavit also includes the following information as to the identity of Jointer:

> Through investigative means it was determined that black male, Xavier Jointer, lives at 3610 Castle Ridge Road, Montgomery, Alabama. Corporal Conway obtained a search warrant for 3610 Castle Ridge Road, Montgomery, Alabama.  On July 25, 2003, members of the Special Operations Division executed the search warrant at 3610 Castle Ridge Road.  Xavier Jointer was taken into custody at the residence. . . .

> Corporal Conway and Corporal S. P. Collins identified Xavier Jointer as the black male subject that [sic] was in the vehicle with Eric LNU on July 16, 2003.  Corporal Collins also conducted the surveillance and observed Eric LNU and Xavier Jointer go to 3610 Castle Ridge Road, Montgomery, Alabama.

(Id. at 2-3.)

On July 28, 2003, the Monday following Jointer's Friday arrest, Jointer was appointed counsel and was "informed" of the charges against him during his initial

appearance in federal court.[5]  (Jointer Aff. at 3-4.)  Thereafter, a preliminary hearing was scheduled for July 30, 2003, before Magistrate Judge McPherson.  Jointer was detained pending the preliminary hearing.

At this preliminary hearing, Wingard testified on behalf of the government.  He relayed the substance of the two drug transactions.  Wingard also testified that Jointer was asleep when the MPD Narcotics Bureau officers went to his residence to execute the search warrant, that Jointer was the only person in the residence, and that, when Wingard "found" Jointer, Jointer was in the hallway.  (Preliminary H'rg Tr. at 11-12, 21, 24 (Ct. Ex. 1).)  Wingard stated that weapons and cocaine were seized from one of the three bedrooms and that cocaine was found in a speaker which was in a second bedroom where various electronic equipment was kept.  (Id. at 13-14, 23-24.)  Firearms also were found in a hall closet.  (Id. at 13.)  Additionally, Wingard testified that Conway ascertained Jointer's identity and place of residence prior to executing the search warrant.  Namely, after viewing a photograph of Jointer, Conway determined that Jointer was the black male who had accompanied the white male during the second drug buy.  (Id. at 28, 37-38.)  According to Wingard, Conway also learned prior to executing the search warrant that Jointer lived in the apartment at 3610 Castle Ridge Road.  (Id.)  Furthermore, Wingard

---

[5] Although neither party has submitted the criminal docket sheet in the case of U.S. v. Xavier Jointer, 2:03mj40-VPM (M.D. Ala. 2003), the court notes that it may take judicial notice of it for purposes of ascertaining the sequence of events which occurred concerning the criminal complaint lodged against Jointer.  See Fed. R. Evid. 201; Griffin v. U.S., 109 F.3d 1217, 1218 n.1 (7th Cir. 1997).

testified that, during the second drug transaction, the "black male," who has been identified as Jointer, is the one who entered 3610 Castle Ridge Road.  (Id. at 20.)

At the conclusion of the evidence, Magistrate Judge McPherson dismissed the criminal complaint based upon her finding that probable cause for the warrantless arrest was lacking.  (Id. at 38-39, 45.)  At the hearing, Jointer was advised that the dismissal of the complaint did not preclude the government from later prosecuting him for the same offense.  (Id. at 45); Fed. R. Cr. P. 5.1(f) (a magistrate judge's dismissal of a criminal complaint for lack of probable cause "does not preclude the government from later prosecuting the defendant for the same offense").

Thereafter, on January 15, 2004, Jointer was rearrested, but this time on a state charge premised on the same conduct underlying the dismissed federal criminal complaint.  The arrest was made pursuant to a felony warrant obtained by Wingard "for Trafficking in Cocaine."  (MPD Offense Report ¶ 21 (Ex. 3 to Doc. No. 57); (Jointer Aff. at 6-7.)  At the time, Jointer was living with his mother in her home.  (Jointer Aff. at 7.) Jointer was arrested by Wingard and "forced in handcuffs" when he [Jointer] stepped outside of the door to his mother's home.  On January 16, 2004, Jointer was arraigned in state court, and bond was set at $100,000.  (Jointer Aff. at 8.)  At his preliminary hearing on February 20, 2004, the state judge reduced Jointer's bond by half, but "bound the case

11

over to the grand jury." (Id. at 9.)  Jointer remained in custody from the date of his arrest

until July 23, 2004, when bond was posted on his behalf.[6]  (Id.)

Seeking to vindicate their constitutional and state law rights, Plaintiffs filed this

instant lawsuit.  They originally proceeded in a *pro se* capacity, but now are assisted by

counsel.  In the operative complaint, which is the Second Amended Complaint, Plaintiffs

bring constitutional claims, as enforced by § 1983, as well as state law claims.  Plaintiffs'

§ 1983 claims allege violations of the Fourth and Fourteenth amendments to the U.S.

Constitution.  Plaintiffs assert that the warrant search of 3610 Castle Ridge Road and the

resulting arrests and prosecutions (both federal and state) of Jointer occurred in the

absence of actual and arguable probable cause.  (2nd Am. Compl. ¶¶ 26-34 (Doc. No. 47).)

Plaintiffs also allege that the state prosecution was retaliatory, purportedly in violation of

the Fourth Amendment (see id. ¶ 31), and that Conway and Wingard are guilty of

selective enforcement of law by engaging in racial profiling, in violation of the

Fourteenth Amendment's Equal Protection Clause.  (See id. ¶¶ 35-36.)  The constitutional

claims are brought against Conway and Wingard in their individual capacities.  (See id.

¶¶ 7-8.)

Plaintiffs also contend that the City of Montgomery has violated the Equal

Protection Clause because it allegedly has in place a custom or policy which permits

racial profiling and selective enforcement of the law on the basis of intentional race

---

[6] The court has not been apprized by the parties of the disposition of the state
criminal case.

12

discrimination.  (Id. ¶¶ 35-46.)  The remaining claims are state law claims for municipal

tort liability, false imprisonment, assault and battery, and wantonness.  (See id. ¶¶ 39-46.)

## V.  DISCUSSION

Prior to discussing the specific claims before the court for resolution on summary

judgment, it is necessary for the court to address two threshold issues.  First, discerning

the factual parameters of Plaintiffs' Fourth and Fourteenth Amendment claims has proven

to be a laborious and tedious task.  Each count sets forth broad constitutional rights and

asserted violations thereof and, for the most part, incorporates by reference all previous

allegations regardless of their relevance.  (See, e.g., 2nd Am. Compl. ¶¶ 26-38.)

Plaintiffs' method of pleading has made it very difficult for the court to ascertain exactly

which facts Plaintiffs contend support their federal claims and which facts support their

state law claims.[7]  The discussion in Plaintiffs' brief also does not contain a clear

---

[7] The Second Amended Complaint borders on the type of shotgun pleading
criticized by the Eleventh Circuit.  See Sikes v. Teleline, Inc., 281 F.3d 1350, 1355 n.9
(11th Cir. 2002) ("[P]laintiffs' complaint is yet another example of what we have often
criticized as 'shotgun pleadings,' where each count 'incorporates' all of the preceding
paragraphs and counts.  We have harshly criticized such shotgun pleadings in the past,
and we repeat our displeasure with this type of complaint now.").  The court observes
that, although Defendants have available Rule 12(e) of the Federal Rules of Civil
Procedure to correct pleading deficiencies, they did not avail themselves of this remedy.
See Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002); Anderson v. District Bd. of
Trustees of Cent. Fla. Cmty. Coll., 77 F.3d 364, 366 (11th Cir. 1996) (a defendant faced
with an incomprehensible complaint "is not expected to frame a responsive pleading," but
"is expected to move the court, pursuant to Rule 12(e), to require the plaintiff to file a
more definite statement").

delineation of the legal parameters and factual bases of the § 1983 Fourth Amendment and Fourteenth Amendment claims.  Jointer's affidavit, which is a primary piece of Plaintiffs' opposition evidence, is equally disconsonant.

The court, as it should, has devoted substantial time to a circumspect review of the specific causes of action asserted in the operative complaint and has attempted to correlate the factual evidence in the record to these causes of action.  Below, as the court's starting point of reference and guidepost, the court recites the specific allegations in each count before delving into its analysis of the merits of the claims.  The court emphasizes that it has not considered any constitutional claim not specifically alleged in the operative complaint.  To the extent, if any, that Plaintiffs have alluded to the other potential federal claims in their brief and evidence, those claims are not properly before the court and have not been considered by the court.  See, e.g., Brown v. Snow, ___ F.3d ___, 2006 WL 431721, *7 (11th Cir. Feb. 24, 2006) ("[D]iscussion of a potential claim in a deposition does not satisfy the requirement of Rule 8(a)" of the Federal Rules of Civil Procedure for pleading a cause of action); Arnold v. Tuskegee Univ., Civ. A. No. 3:03cv515-F, 2006 WL 47507, *9 n.8 (M.D. Ala. Jan. 9, 2006) (Fuller, Chief J.) ("It is axiomatic that a plaintiff cannot amend her complaint to add claims to an action by simply arguing the claims in a brief in opposition to summary judgment.") (citing Gilmour v. Gates, McDonald & Co., 382 F.3d 1312, 1315 (11th Cir. 2004)).

Second, it is unclear from the Second Amended Complaint which Plaintiffs are asserting which claims.  The counts refer inconsistently, sometimes to "Plaintiff,"

14

sometimes to "Plaintiffs," and sometimes only to "Xavier Jointer."  For example, the first sentence under the "Fourth Amendment" cause of action refers to "Plaintiffs" in the plural form, but, in the same count, there also is a reference to "Plaintiff" in the singular form, with no identifying description.  However, all "[P]laintiffs" allege that they have suffered damages, but only "Xavier Jointer demands judgment" for monetary damages. (2nd Am. Compl. ¶¶ 26-30.)

These pleading ambiguities give rise to potential standing issues; notably absent, though, is any discussion in the parties' briefs on standing.  See Arrington v. Helms, 438 F.3d 1336, 2006 WL 321955 *15 n.5 (11th Cir. Feb. 13, 2006) ("'A party who invokes federal jurisdiction must establish that it has standing to assert its claim.'") (quoting Nat'l Alliance for the Mentally Ill, St. Johns Inc. v. Bd. of County Comm'rs, 376 F.3d 1292, 1294 (11th Cir. 2004)).  While this court has serious reservations regarding Cleveland Jointer's and Urbanique's standing as to the majority of the constitutional claims, in particular the Fourth Amendment claims pertaining to Jointer's alleged false arrests and malicious prosecutions, see U.S. v. Fredericks, 586 F.2d 479, 480 (5th Cir. 1978) (holding that "Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted"), the court finds that it is unnecessary to resolve any issues of standing because of the disposition of this case on other grounds.

15

### A. § 1983 Fourth and Fourteenth Amendment Claims
### against Conway and Wingard in their Individual Capacities

Conway and Wingard raise qualified immunity as a defense to Plaintiffs' § 1983 constitutional claims brought against them for monetary damages in their individual capacities.  (Answer, "Affirmative Defenses," ¶ 3 (Doc. No. 48)); (Defs. Br. at 7-11 (Doc. No. 57).)  Conway and Wingard assert that they have demonstrated, and that Plaintiffs have not disputed, that they were acting within "the line and scope of their duties" during the events giving rise to this lawsuit.  (Defs. Br. at 8 (Doc. No. 57).)  Furthermore, the Individual Defendants contend that Plaintiffs' reliance on "conclusory statements" is insufficient to satisfy Plaintiffs' burden of demonstrating the existence of a constitutional violation, (id. at 9), and that Plaintiffs have failed to present "the factual detail necessary" to demonstrate the violation of a clearly-established constitutional right under either the Fourth Amendment or the Fourteenth Amendment.  (Id. at 9, 11.)

Plaintiffs, on the other hand, contend that Conway and Wingard are not entitled to qualified immunity because, viewed in the light most favorable to them, the facts show that the officers lacked probable cause to search 3610 Castle Ridge Road and to arrest and prosecute Jointer.  The court will address each claim separately after setting forth the general principles of law on qualified immunity.

*1.  Qualified Immunity Principles*

A government official may raise qualified immunity as an affirmative defense to a § 1983 individual-capacity lawsuit.  Wilson v. Strong, 156 F.3d 1131, 1135 (11th Cir. 1998).  Pursuant to the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established . . . constitutional rights of which a reasonable person should have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  Qualified immunity bestows upon government officials a well-established "right" to avoid the burdens, costs and time of trial when the government official does not violate clearly-established constitutional norms.  See Cottrell v. Caldwell, 85 F.3d 1480, 1487 (11th Cir. 1996) ("[i]n cases where defendants are entitled to qualified immunity, it is imperative that they receive the benefits of that defense prior to trial"); Mitchell v. Forsyth, 472 U.S. 511, 526 (1985) (qualified immunity is not simply a defense to liability, but an immunity from suit which "is effectively lost if a case is erroneously permitted to go to trial").

The test for whether a governmental defendant is entitled to qualified immunity involves a two-step analysis.  The first inquiry concerns whether the government official was engaged in a "discretionary function."  Madiwale v. Savaiko, 117 F.3d 1321, 1324 (11th Cir. 1997).  The government official bears the burden of making this initial showing.  See Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1264 (11th Cir. 2004).  "A defendant unable to meet this burden may not receive summary judgment on qualified immunity grounds."  Id.  Here, it is undisputed, and in fact alleged by Plaintiffs, that

Conway and Wingard were at all times acting within the scope of their employment as MPD officers during the events pertaining to the search, arrests and prosecutions which form the bases of Plaintiffs' constitutional causes of action.  (2nd Am. Compl. ¶¶ 7-9.)  In other words, there is no question that obtaining warrants, conducting warrant searches and making arrests are part of Conway's and Wingard's job functions as police officers. Whether Conway and Wingard engaged in their duties in an unconstitutional manner is not a consideration under this first inquiry.  See O'Rourke v. Hayes, 378 F.3d 1201, 1205 (11th Cir. 2004) (when determining whether a government official acted within scope of discretionary authority, "'we do not ask whether [a government official] has the right to engage in unconstitutional searches and seizures, but whether engaging in searches and seizures in general is a part of his job-related powers and responsibilities'").  Accordingly, the court finds that Conway and Wingard were "acting within the scope of [their] discretionary authority" when the alleged unconstitutional acts occurred.  Zeigler v. Jackson, 716 F.2d 847, 849 (11th Cir. 1983).  Therefore, only the second part of the qualified immunity inquiry is at issue.

If the government official succeeds in setting forth facts demonstrating that he or she was acting within the scope of his or her discretionary authority, the burden shifts to the plaintiff "to demonstrate that the official is not actually entitled to [qualified immunity]."  O'Rourke, 378 F.3d at 1206; Hutton v. Strickland, 919 F.2d 1531, 1538 (11th Cir. 1990) (after government official establishes the performance of duties within the scope of his or her discretionary authority, "burden shifts to the [plaintiffs] to

18

demonstrate lack of good faith or violation of clearly established statutory or constitutional law").  The qualified immunity test at this second juncture is twofold.  As a "threshold question," the court asks, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show [the government official's] conduct violated a constitutional right?"  Saucier v. Katz, 533 U.S. 194, 201 (2001).  If under Plaintiffs' version of the facts, Plaintiffs' constitutional rights would have been violated, the court must determine "whether the right was clearly established."  Id.  This inquiry focuses on whether the "state of the law" at the time of the alleged violation provided Conway and Wingard with "fair warning that their alleged treatment of the [Plaintiffs] was unconstitutional."  Hope v. Pelzer, 536 U.S. 730, 741 (2002).  Under this standard, "officials can still be on notice that their conduct violates established law even in novel factual circumstances."  Id.  Furthermore, "[w]hen, as here, qualified immunity is asserted in the context of a motion for summary judgment, [the court] look[s] at the evidence in the record, interpreted in the light most favorable to the plaintiff.  Based on this evidence, [the court] must determine if there is a reasonable dispute of material fact over whether the defendant violated the plaintiff's clearly established constitutional rights."  O'Rourke, 378 F.3d at 1206 (citing Dahl v. Holley, 312 F.3d 1228, 1233 (11th Cir. 2002)).

Furthermore, for purposes of qualified immunity, where probable cause, or the lack thereof, is at issue, such as with Plaintiffs' Fourth Amendment claims alleging unlawful search, false arrest and malicious prosecution, the standard is not probable cause

19

in fact, but "arguable" probable cause.  Madiwale, 117 F.3d at 1324; see also Montoute v.

Carr, 114 F.3d 181, 184 (11th Cir. 1997).  "Actual probable cause is not necessary for an

arrest to be objectively reasonable.  Indeed, it is inevitable that law enforcement officials

will in some cases reasonably but mistakenly conclude that probable cause is present, and

in such cases those officials should not be held personally liable."  Von Stein v. Brescher,

904 F.2d 572, 579 (11th Cir. 1990).


### 2.  Fourth Amendment (Counts 1 and 2)

Counts 1 and 2 of the Second Amended Complaint focus on violations of the

Fourth Amendment.  In Count 1 (titled "First Federal Cause of Action"), Plaintiffs

contend that Conway and Wingard "unlawfully entere[d] the plaintiff's (Xavier Jointer)

residence without [his] consent and without a lawfully executed warrant or other legal

authority," in violation of Plaintiffs' Fourth Amendment right to be free from

unreasonable searches and seizures.  (2nd Am. Compl. ¶ 26.)  Plaintiffs contend that

Conway and Wingard "violated clearly established law and [P]laintiffs' constitutional

rights by unlawfully entering and searching [P]laintiff's property and effectuating an

arrest and prosecution without probable cause."[8]  (Id. ¶ 29.)  Count 1 of the Second

Amended Complaint, thus, focuses on the absence of probable cause to support the search

of 3610 Castle Ridge Road on July 25, 2003, Jointer's arrest on that same date, and the

---

[8] The court notes that Plaintiffs used both the singular and plural form of
"plaintiff" in paragraph 29 of the Second Amended Complaint.

ensuing federal prosecution which resulted in a dismissal of the charges against Jointer at the preliminary hearing.

In Count 2 (titled "Second Federal Cause of Action"), it is alleged that, on January 15, 2004, Conway and Wingard unlawfully entered Plaintiffs' "property," without their consent, "brandishing weapons under Gestapo like pretenses," all in violation of Plaintiffs' right to be free from excessive force, in contravention of the Fourth Amendment.  Plaintiffs further contend that Jointer's arrest on January 15 and the resulting prosecution in state court were "without probable cause and in retaliation arising from the dismissal of the case previously brought in federal [court] and the subsequent civil action filed by the plaintiffs in federal court."[9]  (Id. ¶ 31.)  In Count 2, thus, Plaintiffs complain of excessive force, in violation of the Fourth Amendment, arising from the manner in which Jointer was arrested on January 15, 2004.  Also as grounds for their Fourth Amendment claim, Plaintiffs contend that probable cause was absent for the arrest and state prosecution of Jointer and that the prosecution was retaliatory.

(a) The Warrant Search of 3610 Castle Ridge Road on July 25, 2003

Plaintiffs, in cursory form, assert that their "rights were clearly established" so as to deprive Conway and Wingard of their entitlement to qualified immunity on Plaintiffs' Fourth Amendment claim that the July 25, 2003, search of 3610 Castle Ridge Road was

---

[9] The civil action to which Plaintiffs are referring is the instant lawsuit.

conducted without probable cause.  (Pls. Br. at 6 (Doc. No. 59).)  Plaintiffs argue that the information in Conway's affidavit in support of the search warrant is not "reasonably trustworthy" because there is no attestation therein which identifies Jointer by name as the supplier of the cocaine which was sold to Conway during the two drug transactions on July 15 and 16, 2003.  Plaintiffs contend generally that Conway's affidavit fails to connect drug activity to Jointer's residence at 3610 Castle Ridge Road.  (Id. at 5-6.)

Conway and Wingard, however, assert that the information contained in the affidavit supporting the search warrant for the residence at 3610 Castle Ridge Road provided "sufficient facts" from which the issuing magistrate could have concluded that probable cause existed and that they were entitled to rely on the search warrant in executing the search.  (Defs. Br. at 5 (Doc. No. 57).)  In the event, however, that Conway and Wingard were mistaken in their belief as to the constitutional validity of the search warrant, they assert that "at [the] very least, *arguable* probable cause" existed and that Jointer has "alleged no facts that would establish that a reasonable police officer would understand that the search of the residence . . . would violate" the Fourth Amendment. (Id. at 9, 10.)  For the reasons to follow, the court agrees with the Individual Defendants.

As recognized by the Eleventh Circuit in Lowe v. Aldridge, "'[o]nly where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable will the shield of [qualified] immunity be lost.'"  958 F.2d 1565, 1672 (11th Cir. 1992) (quoting Malley v. Briggs, 475 U.S. 335, 344-45 (1986)); see also Golino v. City of New Haven, 950 F.2d 864, 870 (2d Cir. 1991) (internal citations

omitted) ("Normally, the issuance of a warrant by a neutral magistrate, which depends on a finding of probable cause, creates a presumption that it was objectively reasonable for the officers to believe that there was probable cause, and a plaintiff who argues that a warrant was issued on less than probable cause faces a heavy burden.").  The court, thus, must "review the evidence known to [the law enforcement officers] with an eye to whether any reasonable officer would have sought . . . [a] search warrant[] based on that information."  Lowe, 958 F.2d at 1570.

Conway is the officer who submitted the affidavit in support of the search warrant. The facts which were in possession of Conway at the time he applied for the search warrant are not in dispute; therefore, "if the facts as know to [him] constituted arguable probable cause, then summary judgment on the ground of qualified immunity is proper." Id. at 1579.

In his affidavit submitted in support of the search warrant, Conway sets forth that he is a 15-year veteran of the MPD with more than a decade of experience investigating drug-related offenses, thus, evidencing his expertise in narcotics investigations.  The affidavit establishes that, twice in July 2003, Conway, acting in an undercover capacity, purchased cocaine from two individuals.  On each occasion, after obtaining the purchase money from Conway, these individuals were observed by law enforcement officers entering for a "short time" and then exiting the residence at 3610 Castle Ridge Road, before returning to deliver the cocaine to Conway.  (Aff. in support of Search Warrant

23

(Ex. 1 to Doc. No. 57).)  Additionally, on the first drug buy, after receiving the money from Conway, one of the sellers told Conway to meet him in 30 minutes at a local restaurant and that "he would have the cocaine."  (Id. at 1.)  The court finds that, based on this information, it would be reasonable for a law enforcement official to conclude that, during each of the two drug transactions, the sellers, who were armed with cash specifically earmarked as payment for cocaine, entered the residence at 3610 Castle Ridge Road for the purpose of exchanging that money for cocaine and then left the house with the cocaine and that cocaine, therefore, was being distributed from the premises. Furthermore, the court finds that an entirely reasonable inference arises that substantial quantities of cocaine would be found at that location when the foregoing facts are considered in conjunction with the fact that one of the sellers during the second drug transaction told Conway that his supplier could provide ounce and kilogram quantities of cocaine.

The level of proof required for probable cause is not certainty, nor is it proof beyond a reasonable doubt, but only probability, and the court finds that the facts presented to the issuing magistrate were enough to establish a probability of criminal drug activity at 3610 Castle Ridge Road.  The court emphasizes that probable cause need not be established by direct evidence, and admittedly direct evidence is lacking in this case. See U.S. v. Jones, 994 F.2d 1051, 1056 (3rd Cir. 1993) ("[I]t is well established that direct evidence is not required for the issuance of a search warrant."); see also U.S. v. Burton,

24

288 F.3d 91, 103 (3rd Cir. 2002) ("probable cause to search can be based on an accumulation of circumstantial evidence that together indicates a fair probability of the presence of contraband at the home of the arrested").  Indeed, circumstantial evidence, which the court finds amply exists here, may be more convincing than direct evidence.[10]  See, e.g., Olson Towboat Co. v. Dutra, 300 F.2d 883, 884 (9th Cir. 1962) ("At times circumstantial evidence is stronger than direct testimony based on powers of observation.").

Because the court finds that there was actual probable cause for the issuance of the search warrant, it need not continue any further with the qualified immunity analysis.  See Saucier, 533 U.S. at 201 ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.").  Alternatively, assuming *arguendo* the absence of probable cause, the court does not find that the affidavit was so lacking in indicia of probable cause so as to render

---

[10] To illustrate, the court charges juries that they may receive and consider circumstantial evidence the same as direct evidence.  Routinely, the court recites to the jury an example of circumstantial evidence learned from the late Honorable Frank M. Johnson, Jr., some fifty years ago, while the undersigned was an assistant U.S. Attorney, viz.:

> If you go to sleep tonight and wake up in the morning and look out the window and see snow on the ground and rabbit tracks on the snow; you did not see it snow, so it is not direct evidence; you did not see a rabbit walk across the snow after it snowed, so it is not direct evidence; but you may readily infer from what you do see that, while you were asleep, it must have snowed, and, after it snowed, a rabbit must have walked across the snow.

The affidavit in support of the search warrant contains sufficient rabbit tracks across the snow pointing to the presence of contraband in the residence of 3610 Castle Ridge Road.

Conway's and Wingard's reliance on the warrant to be unreasonable.  At the very least, the court finds that the existence of probable cause was arguable.  As stated by one court, a dispute over whether the affidavit establishes probable cause to search "is all that is needed in order to establish qualified immunity for an official who obtained a search warrant."  Davison v. Frey, 837 F. Supp. 235, 239 (E.D. Mich. 1993).

The court has considered the arguments proffered by Plaintiffs, but does not find those arguments persuasive.  Although Plaintiffs contend that the search warrant was obtained "maliciously and with bad faith" (Pls. Br. at 6-7 (Doc. No. 59)), they have not submitted any evidence to substantiate their terse allegations, and the court has not uncovered any such evidence in the record.  See Lowe, 958 F.2d at 1571.  Bare averments of malice and bad faith are never sufficient to establish a constitutional claim, without regard to the qualified immunity analysis.  See Crawford-El v. Britton, 523 U.S. 574, 588 (1988) (observing that "[i]t is obvious, of course, that bare allegations of malice would not suffice to establish a constitutional claim").  Indeed, the Supreme Court has recognized that "[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis."  Whren v. U.S., 517 U.S. 806, 813 (1996).  Moreover, in the context of qualified immunity, evidence of a government official's "subjective intent," i.e., evidence of conduct which is "malicious or otherwise improperly motivated," is completely "irrelevant" to the defense.  Id.; Harlow, 457 U.S. at 818 ("bare allegations of malice should not suffice to subject government officials either to the costs of trial or to

the burdens of broad-reaching discovery" so as to deprive government officials of qualified immunity).  Jointer's allegations of fraud are equally conclusory and unavailing. (See Pls. Br. at 6 (Doc. No. 59).)

Furthermore, contrary to Plaintiffs' assertion, it is not an impediment to a finding of probable cause that the affidavit in support of the search warrant does not identify Jointer by name or otherwise provide who lived in the residence at 3610 Castle Ridge Road.  The focus of the court's inquiry for assessing the constitutional validity of probable cause for the issuance of the search warrant is on whether criminal conduct can be connected to the specific residence, i.e., 3610 Castle Ridge Road, "and not on the activities of any particular person."  Burton, 288 F.3d at 103.

The court also rejects Plaintiffs' suggestion that Conway and Wingard were not entitled to rely on the search warrant because it "was not signed by a duly authorized judicial officer for the state of Alabama."  (Pls. Br. at 6-7 (Doc. No. 59).)  Plaintiffs have not submitted any evidence that, at the time of issuance, Magistrate Patrick J. Murphy was not "authorized to practice law in the State of Alabama" or "authorized by law to issue search warrants, within the magistrate's territorial jurisdiction," as provided in Rule 3.7 of the Alabama Rules of Criminal Procedure which sets out those individuals who

have authority to issue search warrants.[11]  Ala. R. Civ. P. 3.7; (Search Warrant (Ex. 1 to Doc. No. 57).)

Having addressed Plaintiffs' arguments presented in opposition to the Individual Defendants' defense of qualified immunity, the court makes two final observations of its own.  First, as to the issuance of the search warrant, Plaintiffs have presented no evidence that Wingard had any role in the preparation of the affidavit submitted in support of the search warrant or even accompanied Conway to obtain the search warrant.  The court, thus, finds that Wingard also is entitled to qualified immunity, given the failure of Plaintiffs to connect any conduct of Wingard to the actual issuance of the search warrant. See Williams v. Bennett, 689 F.2d 1370, 1383 (11th Cir. 1982) ("[S]ection 1983 plainly requires . . . a causal connection between the Constitutional deprivation and the defendant's acts or omissions.").

Second, it has not gone unnoticed by the court that Jointer's affidavit is devoid of any evidence that Conway was involved in the execution of the search warrant on July 25.  No evidence in the record, including the MPD offense report, reveals which individual officers, other than Wingard, participated in the search and arrest of Jointer on July 25, 2003.  (See MPD Offense Report ¶¶ 19-21(Ex. 3 to Doc. No. 57).)  Counsel for Defendants, however, has admitted Conway's participation in the search (see Defs. Br.

_____

[11] The court takes judicial notice that the records of the Alabama State Bar reveal that one Patrick Joseph Murphy is employed by the Montgomery Municipal Court and is a member of good standing of the Bar of the State of Alabama.  See Fed. R. Evid. 201.

28

at 57 (Doc. No. 57).)  An "admission," within the meaning of Fed. R. Civ. P. 56(c), the

procedural rule governing summary judgment proceedings, encompasses "anything which

is in practical fact an admission," inclusive of "statements made in a brief presented to the

district court."  Woods v. Chicago, 234 F.3d 979, 989 (7th Cir. 2000).  In its summary

judgment analysis, the court, thus, has presumed Conway's presence during the search.

As discussed herein, the existence of a valid search warrant supported by probable cause

refutes Plaintiffs' averment that either Conway or Wingard searched Jointer's and

Cleveland Jointer's residence without "a lawfully executed warrant" and "without

probable cause."  (2nd Am. Compl. ¶¶ 26, 29.)


### (b) The Warrantless Arrest of Jointer on July 25, 2003

The court turns to Plaintiffs' contention that Jointer was arrested without probable

cause on July 25, 2003, during the execution of the search warrant at 3610 Castle Ridge

Road.[12]  Plaintiffs focus on Magistrate Judge McPherson's finding at the preliminary

hearing that probable cause for Jointer's arrest was lacking and the resulting dismissal of

the criminal complaint.  (Pl. Br. at 5 (Doc. No. 59).)  Although Plaintiffs have failed to

submit a copy of the transcript from the preliminary hearing, they contend that the

---

[12] In his affidavit, Jointer complains only of Wingard's actions in effecting his arrest; he never mentions Conway.  Assuming for argument only that Conway was involved in Jointer's arrest, the court finds that its conclusions herein are equally applicable to Conway.

testimony presented at that hearing demonstrates that neither Conway nor Wingard had "arguable probable cause connecting [Jointer] to any drug activity" so as to support his warrantless arrest.  (Id.)  Plaintiffs state that "the evidence does not show that . . . Wingard and Conway were presented with any 'reasonable trustworthy' information" that Jointer was the supplier of the cocaine which was sold to Conway during the drug transactions at issue.  (Id. at 5-6.)  Plaintiffs also assert in cursory fashion that Jointer's rights were "clearly established at the time of the defendants' conduct" and that Conway and Wingard acted "fraudulently, maliciously and with bad faith" in arresting Jointer. (Id. at 6.)

"It is clearly established that an arrest made without probable cause violates the Fourth Amendment."  Redd v. City of Enterprise, Ala., 140 F.3d 1378, 1381 (11th Cir. 1998).  Initially, the court dispels any argument that Jointer's warrantless arrest is invalid simply on the basis that it occurred inside Jointer's home.  Law enforcement officers may arrest an individual in his or her residence, "without an arrest warrant, as long as they are lawfully on the premises (by reason, say, of a search warrant) and probable cause exists." U.S. v. Winchenback, 197 F.3d 548, 553 (1st Cir. 2000); cf. Greiner v. City of Champlin, 27 F.3d 1346, 1353 (8th Cir. 1994) (officers had qualified immunity for warrantless arrest in residence when officers arguably had probable cause to believe residents had violated law and officers had a right to enter the home because of arguable exigent circumstances).  Probable cause to arrest depends

upon whether, at the moment the arrest was made, the officers had probable
cause to make it--whether at that moment the facts and circumstances
within their knowledge and of which they had reasonably trustworthy
information were sufficient to warrant a prudent man in believing that the
petitioner had committed or was committing an offense.

Beck v. Ohio, 379 U.S. 89, 91 (1964); see also Holmes v. Kucynda, 321 F.3d 1069, 1079

(11th Cir. 2003).  "'Probable cause does not require the same type of specific evidence of

each element of the offense as would be needed to support a conviction.'"  Holmes, 321

F.3d at 1069 (quoting Adams v. Williams, 407 U.S. 143, 149 (1972)).  For purposes of

determining qualified immunity, an officer does not have to obtain evidence on each

element of the crime prior to making an arrest.  Such a requirement "would negate the

concept of probable cause and transform arresting officers into prosecutors."  Scarbrough

v. Myles, 245 F.3d 1299, 1302-1303 (11th Cir. 2001).  The question for qualified

immunity is "not whether an arrestee's conduct is a crime or ultimately will result in

conviction.  Police officers are not expected to be lawyers or prosecutors."  Id. at 1303

n.8.  Indeed, "'[a]lthough probable cause requires more than suspicion, it does not require

convincing proof, and need not reach the [same] standard of conclusiveness and

probability as the facts necessary to support a conviction.'"  Durruthy v. Pastor, 351 F.3d

1080, 1088 (11th Cir. 2003) (quoting Lee v. Ferraro, 284 F.3d 1188, 1195 (11th Cir.

2002)).  Finally, as stated, in the context of qualified immunity, the standard is not

probable cause in fact, but "arguable" probable cause.  Madiwale, 117 F.3d at 1324.

In light of the foregoing principles, the court must determine whether the information possessed by Conway and Wingard at the moment of Jointer's arrest demonstrates arguable probable cause for the arrest for knowingly and intentionally possessing with intent to distribute 50 or more grams of cocaine base, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1),[13] or, alternatively for a closely related offense.  U.S. v. Atkinson, 450 F.2d 835, 838 (5th Cir. 1971) ("[W]hen a crime under which the arrest is made and a crime for which probable cause exists are in some fashion related, then there is no question but that there is a valid arrest."); see also U.S. v. Rambo, 789 F.2d 1289, 1294 (8th Cir. 1986) ("Where a defendant is arrested for the wrong offense, the arrest is still valid if probable cause existed to arrest the defendant for a closely related offense.").

For purposes of ascertaining whether arguable probable cause existed for Jointer's arrest, the relevant sources of evidence in the record are fourfold.  The first source of evidence is Jointer's affidavit in which Jointer, in his own words, recounts what

---

[13] The court observes that the felony violation with which Jointer was charged requires proof of possession.  Possession can be actual or constructive.  U.S. v. Riggins, 563 F.2d 1264, 1266 (5th Cir. 1977).  Possession also can be either joint or sole.  Id.  Actual possession requires that a defendant "either ha[s] physical possession or that he ha[s] actual personal dominion over the thing allegedly possessed."  U.S. v. DeRose, 74 F.3d 1177, 1185 (11th Cir. 1996).  Constructive possession is "'the knowing exercise of, or the knowing power or right to exercise, dominion and control over the proscribed substance.'"  Holmes, 321 F.3d at 1079-80 (footnote and citation omitted).  "Constructive possession need not be exclusive, and may be proven through circumstantial evidence that shows ownership, dominion, or control over the drugs or the premises where the substance is located."  Id. at 1080.

transpired on the day of his arrest.  (Jointer Aff. (Pls. Ex. A to Doc. No. 59).)  With one exception referenced below in footnote 14, the facts in Jointer's affidavit do not shed light on what information was known to Conway and Wingard at the time of Jointer's arrest.  See Jones v. Cannon, 174 F.3d 1271, 1283 n.4 (11th Cir. 1999) ("Decisions of the Supreme Court and this Court make it clear that what counts for qualified immunity purposes relating to probable cause to arrest is the information known to the defendant officers or officials at the time of their conduct, not the facts known to the plaintiff then.").  Jointer's affidavit, however, is helpful to the extent that it establishes that, when he was arrested, Jointer was not in actual possession of the cocaine found at 3610 Castle Ridge Road; therefore, whether arguable probable cause existed to arrest Jointer "is dependent on whether it was arguably reasonable to conclude that [Jointer] exerted constructive possession over the discovered contraband."  Holmes, 321 F.3d at 1079; see also supra, footnote 13.  The court, thus, must ascertain whether the other two sources of evidence demonstrate the absence of arguable probable cause as to Jointer's constructive possession.

The second source of evidence is the affidavit submitted by Conway in support of the search warrant.  As an initial observation, as stated, the existence of the search warrant for the premises of 3610 Castle Ridge Road establishes that Conway and Wingard had a right to be in Jointer's residence on the day they arrested Jointer.  Also, as discussed in the preceding section, Conway's affidavit supplies sufficient information to establish that, at the very least, arguable probable cause existed for the officers to believe

that drugs could be found in the residence at 3610 Castle Ridge Road.  The fact, however, that there was arguable probable cause to search 3610 Castle Ridge Road does not automatically supply arguable probable cause for Jointer's arrest.  See Ybarra v. Illinois, 444 U.S. 85, 91 (1980) ("[A] search or seizure of a person must be supported by *probable cause particularized with respect to that person.*  This requirement cannot be undercut or avoided simply by pointing to the fact that coincidentally there exists probable cause to . . . search the premises where the person may happen to be.") (emphasis added).

The affidavit in support of the search warrant does not name Jointer in any form or fashion.  The affidavit does not contain any facts revealing what information, if any, Conway knew concerning (1) the identity of Jointer, (2) whether Jointer was a resident of 3610 Castle Ridge Road or merely a visitor on the premises, or (3) what role, if any, Jointer had in the drug transactions.  Based on this affidavit, the court is left only with the facts that, on the day of the search and at the moment of Jointer's arrest, Jointer was present in the residence where arguable probable cause existed that drugs would be found.  As recognized in Holmes, "[t]his circuit's case law has clearly established that '[m]ere presence at the scene of a crime, without more, does not support a finding of probable cause to arrest.'"  321 F.3d at 1081.  The court, thus, agrees with Plaintiffs that the affidavit in support of the search warrant does not establish independent arguable probable cause for Jointer's arrest.

The court, thus, turns to Wingard's affidavit, the third source of evidence, in search of facts demonstrating what information was known to Conway and Wingard at

34

the time of Jointer's arrest.  (See Criminal Compl. (Ex. to Doc. No. 57).)  Wingard filed

his affidavit in federal court in support of the post-arrest criminal complaint against

Jointer.  The affidavit provides that the officers ascertained that Jointer lived at 3610

Castle Ridge Road, that Jointer was taken into custody at the residence during the

execution of the search warrant, that Conway and another officer, who was involved in

the surveillance, identified Jointer as the individual who accompanied "Eric LNU" during

the drug transaction on July 15, 2003, and that a substantial quantity of cocaine (much

more than 50 grams of cocaine) was found in the residence.  Wingard, however, fails to

pinpoint *when* the officers ascertained Jointer's identity, *when* they learned that Jointer

exercised control over the apartment as its resident, and *when* they became aware of

Jointer's role during the second drug transaction on July 16, 2003.[14]  More to the point,

the affidavit fails to reveal whether these facts were known to Conway, Wingard and/or

other involved officers at the time of the arrest or whether the facts were acquired

subsequent to the arrest.  The affidavit does not affirmatively state when Conway and

Wingard learned this valuable information, and these ambiguities preclude a finding by

---

[14] As to the cocaine seized from the residence, Jointer indicates in his affidavit that
the cocaine was not found until after his arrest; thus, the actual existence of the
contraband cannot be considered to have been within Conway's and Wingard's
knowledge at the time of the arrest.  See Winchenbach, 197 F.3d at 554 n.4 ("of course,
when the arrest occurs immediately, evidence acquired during the ensuing search may not
be used to justify it retrospectively").

this court that these facts were known to Conway and Wingard at the time of the arrest.[15]

See Goddard v. Urrea, 847 F.2d 765, 767 (11th Cir. 1988) ("We begin with the familiar principle that in reviewing a question concerning summary  judgment, this court must resolve all factual ambiguities in favor of the party opposing the motion."); see also Roberts by Roberts v. City of New York, 753 F. Supp. 480, 483 (S.D.N.Y. 1990) (In determining probable cause, "facts relied upon must not be susceptible to . . . ambiguous explanation.").  The court simply has no basis upon which to determine the parameters of when the Individual Defendants acquired knowledge of the foregoing facts.[16]

The Individual Defendants, however, argue that the fact that Magistrate Judge McPherson issued an arrest warrant based upon Wingard's affidavit is "*prima facie*" evidence of probable cause.  (Defs. Br. at 3 (Doc. No. 57).)  The Individual Defendants cannot rely on the existence of a warrant as *post facto* justification for making the warrantless arrest.  The factual scenario in this case is distinguishable from cases where courts have concluded that, although the warrant was not supported by probable cause,

---

[15] As revealed from the analysis below, the court notes that Defendants could have spared the court valuable time and resources if they had engaged in the simple task of obtaining affidavits from Conway and Wingard to clarify these obvious factual ambiguities.

[16] The court makes no finding as to whether the magistrate judge acted mistakenly in issuing the warrant.  The court merely finds that, on summary judgment in this civil action, it cannot construe factual ambiguities in favor of Conway and Wingard. However, as discussed later in this opinion, the court finds that Wingard's testimony at the preliminary hearing in the criminal case clarifies the ambiguities so as to support a finding in this litigation that, at the time of Jointer's warrantless arrest, Conway and Wingard had at least arguable probable cause to make the arrest.

the officers reasonably relied on the fact that a warrant had been issued prior to the arrest. See Lowe, 958 F.2d at 1672 ("'[o]nly where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable will the shield of immunity be lost'").  Here, there was no warrant, faulty or otherwise, at the time Jointer was arrested.

The court, thus, turns to the fourth source of evidence, i.e., Wingard's testimony given at the criminal preliminary hearing held before Magistrate Judge McPherson to ascertain whether the testimony supplies the missing link for arguable probable cause. Initially, the court must examine whether there is an evidentiary rule which permits the court to consider the testimony of Wingard in the instant proceedings.  As their main weapon to avoid a finding by this court of qualified immunity, Plaintiffs rely on the fact that Magistrate Judge McPherson found no probable cause at the preliminary hearing. Plaintiffs have urged the court to "take judicial notice" of Magistrate Judge McPherson's finding.  (See Pls. Br. at 8 (Doc. No. 59).)  Plaintiffs also contend that the court should take judicial notice of the substance of Wingard's testimony, arguing that the testimony confirms the absence of even arguable probable cause.[17]  (Id. at 5.)  The failure of

---

[17]   Notably, Jointer failed to submit a copy of that transcript for this court's review.  The proceeding was digitally recorded, and a transcription was not contained within the criminal file, causing this court to have to delay its consideration of the instant motion for summary judgment in order to request the transcript.  The court, however, has obtained the transcript and has marked it as Court Exhibit 1.

Plaintiffs to cite any authority in support of their position is telling, as their reliance on judicial notice is problematic.

Rule 201(b) of the Federal Rules of Evidence provides that "[a] judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).  It is well established that a court is precluded from taking judicial notice of the truth of a judicial finding of fact, simply because another judge has proclaimed the fact as so.  See, e.g., General Elec. Capital Corp. v. Lease Resolution Corp., 128 F.3d 1074, 1082 (7th Cir. 1997) ("We agree that courts generally cannot take notice of findings of fact from other proceedings for the truth asserted therein because these findings are disputable and usually are disputed."); U.S. v. Jones, 29 F.3d 1549, 1553 (11th Cir. 1994) (concluding that a court "may take notice of another court's order only for the limited purpose of recognizing the 'judicial act' that the order represents or the subject matter of the litigation").[18]

---

[18] See also M/V McQueen v. San Diego Marine Constr. Co., 708 F.2d 1483, 1491 (9th Cir. 1983) ("As a general rule, a court may not take judicial notice of proceedings or records in another cause so as to supply, without formal introduction of evidence, facts essential to support a contention in a cause then before it.); Wright & K. Graham, Federal Practice and Procedure: Evidence § 5106.4 at 232-234 (2nd Ed. 2005) ("It seems clear that a court cannot notice pleadings or testimony as true simply because these statements are filed with the court.  Courts recognize this when the issue is squarely posed.") (collecting cases).

In <u>Jones</u>, the Eleventh Circuit made the following observations:

> In order for a fact to be judicially noticed under Rule 201(b), indisputability is a prerequisite.  21 C. Wright & K. Graham, *Federal Practice and Procedure: Evidence* § 5104 at 485 (1977 & Supp.1994).  Since the effect of taking judicial notice under Rule 201 is to preclude a party from introducing contrary evidence and in effect, directing a verdict against him as to the fact noticed, the fact must be one that only an unreasonable person would insist on disputing.  <u>Id.</u>  If it were permissible for a court to take judicial notice of a fact merely because it has been found to be true in some other action, the doctrine of collateral estoppel would be superfluous.  <u>Id.</u> at 256-57 (footnote omitted).  Moreover, to deprive a party of the right to go to the jury with his evidence where the fact was not indisputable would violate the constitutional guarantee of trial by jury.  <u>Id.</u> at 485.  <u>Accord United States v. Aluminum Co. of America</u>, 148 F.2d 416, 446 (2d Cir.1945) (L. Hand, J.).
>
> In <u>Liberty Mut. Ins. Co. v. Rotches Pork Packers, Inc.</u>, 969 F.2d 1384, 1388-89 (2d Cir. 1992) (citations omitted), the Second Circuit concluded that the district court erred in granting summary judgment based on a finding of fact within a bankruptcy court order.  It recognized that a "court may take judicial notice of a document filed in another court 'not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.'"  <u>Liberty Mut. Ins. Co.</u>, at 1388 (citation omitted).  Accordingly, a court may take notice of another court's order only for the limited purpose of recognizing the "judicial act" that the order represents or the subject matter of the litigation.

29 F.3d at 1553 (citations omitted).  Relying on the foregoing principles, the Eleventh Circuit in <u>Jones</u> concluded that, in a civil action alleging breach of contract, the district court could not take judicial notice of an order entered in a prior federal court proceeding which contained a judicial finding that the plaintiff had refused to work unless he obtained a salary increase because the facts did not "indisputably establish that [the plaintiff] refused to work."  <u>Id.</u>  Similarly, as in <u>Jones</u>, Magistrate Judge McPherson's

finding that the facts before her did not rise to the level of probable cause is not "indisputable," and, thus is not a finding which this court can judicially notice.  Id.

Judicial notice aside momentarily, it is appropriate for the court to reiterate that, even assuming the absence of objective probable cause for Jointer's warrantless arrest, "the question of [qualified] immunity remains, as it should, distinct from the question of probable cause."  Warren v. Dwyer, 906 F.2d 70, 75 (2d Cir. 1990).  At the qualified immunity stage, the court is not concerned with actual probable cause, but only with arguable probable cause.  Even if the court independently agreed with Magistrate Judge McPherson's ruling as to the absence of probable cause, such a finding would not present an obstacle to this court finding that it was reasonable for Conway and Wingard to believe that they had a good faith basis for their actions in arresting Jointer.  Conway and Wingard are entitled to qualified immunity if the court finds their assessment "was reasonable, even if mistaken."  Hunter v. Bryant, 502 U.S. 224, 227 (1991) (holding that Secret Service agents were entitled to qualified immunity where they were reasonably mistaken that probable cause was present, even though criminal complaint was subsequently dismissed on motion of the government).  That is, "an officer is entitled to qualified immunity if there was even 'arguable' probable cause to arrest the defendant, regardless of whether the facts later establish that probable cause did not exist."  Whitner v. Moore, 160 Fed. Appx. 918, 2005 WL 3501867 (11th Cir. Dec. 23, 2005) (unpublished) (citing Durruthy, 351 F.3d at 1089).  As reiterated by the Supreme Court in

Hunter, "The qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'"  502 U.S. at 229 (quoting Malley, 475 U.S. at 343); see also Forman v. Richmond Police Dept., 104 F.3d 950, 962 (7th Cir. 1997) (subsequent determination by prosecutor that there was not probable cause for plaintiff's arrest is immaterial to whether officer acted objectively reasonable in light of the facts known to him at the time arrest).

Although Wingard's testimony is ineligible for judicial notice, the court next considers whether the rules of evidence governing hearsay and its exceptions provide an avenue for the court to consider Wingard's testimony.  See Fed. R. Evid. 801(c) ("'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.").  The hearsay rule does not preclude the court from considering Wingard's testimony for the limited purpose of showing the effect that the information had on the Individual Defendants in ascertaining whether probable cause existed for the warrantless arrest of Jointer.  Using an out-of-court statement as evidence of the declarant's *knowledge* of the existence of particular facts, rather than as evidence of the truth of the facts asserted, does not offend the hearsay rule.[19]  See Woods, 234 F.3d at 987; see also Fed. R. Evid. 803(3)

---

[19] The court notes that Conway's affidavit submitted in search of the search warrant for 3610 Castle Ridge Road is admissible in these proceedings for the same purpose.

(state of mind exception to hearsay rule).  It is this purpose for which the court finds that it may consider Wingard's testimony.

Ironically, though, when the testimony is considered for this limited purpose, the court finds that the testimony is favorable for the Individual Defendants because it clarifies the ambiguous timeframe in Wingard's affidavit presented to Magistrate Judge McPherson in support of the criminal complaint.  Namely, at the preliminary hearing, Wingard testified to the facts known to the officers at the time of Jointer's arrest. Wingard testified that Conway ascertained, prior to execution of the search warrant, that the "black male" present during the second drug transaction on July 16, 2003, was Jointer and that Jointer resided at 3610 Castle Ridge Road.  (Preliminary H'rg Tr. at 28, 37-38 (Ct. Ex. 1).)

With that said, the court recognizes that Wingard is testifying about information acquired by Conway, and it is not clear from Wingard's testimony whether Wingard had the benefit of Conway's knowledge at the time of Jointer's arrest.  There, thus, remains for consideration the issue of whether, in seeking qualified immunity, Wingard can rely upon information known to Conway which had not been communicated to Wingard prior

to the arrest of Jointer.[20]  In <u>Madiwale</u>, the Eleventh Circuit held that "[p]robable cause exists if 'the facts and the circumstances within the *collective knowledge* of the law enforcement officials, of which they had reasonably trustworthy information, are sufficient to cause a person of reasonable caution to believe that an offense has been or is being committed.'"  117 F.3d at 1324 (emphasis added) (quoting <u>U.S. v. Jimenez</u>, 780 F.2d 975, 978 (11th Cir. 1986)).  Additionally, "when a group of officers is conducting an operation and there exists at least minimal communication between them, their collective knowledge is determinative of probable cause." <u>U.S. v. Wilson</u>, 894 F.2d 1245, 1254 (11th Cir. 1990); <u>see also</u> <u>U.S. v. Willis</u>, 759 F.2d 1486, 1494 (11th Cir. 1985) (same). The arresting officer need not have actual knowledge of all the available information known by other officers.  <u>Stassi v. U.S.</u>, 410 F.2d 946, 952 n.7 (5th Cir. 1969) ("The officers involved were working in close concert with each other, and the knowledge of one of them was the knowledge of all."); <u>see also</u> <u>U.S. v. Butler</u>, 74 F.3d 916, 921 (9th Cir. 1996) ("collective knowledge of police officers involved in an investigation, even if some of the information known to other officers is not communicated to the arresting officer," can establish probable cause).

---

[20] At the preliminary hearing, Wingard did not testify whether he acquired the information known to Conway about Jointer prior to Jointer's arrest on July 25, 2003, or whether he learned the information when he was preparing to testify at the preliminary examination hearing which occurred five days after Jointer's arrest.  For purposes of the present analysis, the court assumes then that Wingard did not have knowledge at the time of his arrest.

In this case, the arrest was a joint effort by all of the officers involved in executing the search warrant at 3610 Castle Ridge Road.  Conway and Wingard were two of those officers.  As in Stassi, *supra*, it is apparent from the record that Conway and Wingard, as members of the MPD's Narcotics Bureau, were working in "close concert" on the investigation.  410 F.2d at 952 n.7.  The court, thus, finds that Conway's knowledge is imputed to Wingard, regardless of whether at the time of the arrest Wingard had actual knowledge of all the facts.

The court observes that, if an objection exists to Wingard's testimony on the basis that Wingard, rather than Conway himself, testified to information known to Conway at the time of the arrest, but not known to Wingard, the court need not grapple with any such potentiality for exclusion.  Suffice it to say for present purposes that Jointer has not raised any objection to the court's consideration of Wingard's testimony.  To the contrary, Jointer has urged the court to consider it.  Jointer, thus, has waived any objections to the admissibility of the testimony.  See BGHA, LLC v. City of Universal City, Tex., 340 F.3d 295, 299 (5th Cir. 2003) (on summary judgment, plaintiff waived claim that affidavits submitted by city were hearsay since plaintiff failed to object to admission of affidavits before district court); Motor Club of Am. Ins. Co. v. Hanifit, 145 F.3d 170, 175 (4th Cir. 1998) (holding that "defendants waived any objection to the admissibility of [police] report when they submitted it to the court on at least three separate occasions with their motions for summary judgment"); Offshore Aviation v.

Transcon Lines, Inc., 831 F.2d 1013, 1015 (11th Cir. 1987) (holding that, "if evidence

otherwise inadmissible provoked no timely objection, it could and, if material, should be

factored into a summary judgment decision") (citing Munoz v. Int'l Alliance of Theatrical

Stage Employees, Etc., 563 F.2d 205, 214 (5th Cir. 1977)).

     Wingard's testimony fills the gap as to the timeframe when the officers learned

Jointer's identity, address and involvement in the drug transaction on July 16, 2003.

Based on Wingard's testimony, there is evidence that Conway knew, prior to the

execution of the search warrant and, thus, prior to Jointer's arrest, that Jointer

accompanied the "white male" (also known as "Eric LNU") on the drug transaction on

July 16, 2003, and departed in the same vehicle with the white male immediately after the

white male had received $280.00 in buy money from Conway for the purchase of 1/4

ounce of cocaine base (also called crack cocaine).  It certainly could be inferred from the

conversation between Conway and the white male that the white male was departing in

order to get the cocaine from his "source."  (Crim. Compl. Aff. at 2.)  Other MPD

officers, who were conducting surveillance during the buy, were aware that the white

male and Jointer made one brief stop prior to returning to Conway with five grams of

crack cocaine.  Namely, unknown to the white male and Jointer, law enforcement

officials saw Jointer exit the vehicle and enter 3610 Castle Ridge Road for "[a] short

time."  (Id.)  Immediately thereafter, Jointer and the white male were followed back to the

restaurant where the white male supplied Conway with approximately five grams of cocaine.  (Id.)

Obviously, as Jointer point outs, Conway and the other involved officers did not have knowledge of the actual existence of the large quantities of cocaine found in the residence, as they had not located the contraband at the exact moment of Jointer's arrest. At the time of Jointer's arrest, however, the officers knew that Jointer was a resident of 3610 Castle Ridge Road.  In addition, through their surveillance, the officers had observed activities on two occasions occurring at 3610 Castle Ridge Road which arguably were consistent with drug trafficking.  Moreover, the officers had direct knowledge, also through their surveillance, connecting Jointer to those activities on July 16, 2003.  All of this information, as discussed above, is imputed to Wingard pursuant to the collective knowledge rule.

The totality of all of these facts, collectively known by Conway and Wingard as experienced police officers, provides the aggregate of the circumstances and the inferences properly drawn therefrom which form the basis of a finding of at least arguable probable cause to arrest Jointer for his participation in illegal drug activities and, in particular, in the sale of five grams of cocaine base which occurred on July 16, 2003.  A reasonable officer could have concluded that on July 16, either solely or jointly, Jointer had knowledge of, and exercised dominion and control over, the five grams of cocaine base sold to Conway and had the requisite intent to distribute the drugs.  An individual

46

who knowingly and intentionally possesses with intent to distribute or distributes five grams or more of cocaine base violates 21 U.S.C. § 841(a)(1).  See 21 U.S.C. § 841(b)(1)(B)(iii).

For purposes of according qualified immunity to Conway and Wingard, the court need not focus solely on the *alleged* absence of evidence to connect Jointer to the larger quantities of cocaine found after his arrest on the premises of 3610 Castle Ridge Road during the execution of the search warrant.  The July 16, 2003, drug transaction was part and parcel of the Individual Defendants' investigation and formed part of the basis for the charge lodged against Jointer in the federal criminal complaint.  As stated, Jointer's involvement in the sale of the five grams of cocaine base on July 16, 2003, gives rise, in and of itself, to a violation of 21 U.S.C. § 841(a)(1).  The fact that the July 16 drug transaction did not involve "50 or more grams of cocaine base," the total drug quantity charged in the criminal complaint filed in federal court, does not negate or lessen the illegality of Jointer's conduct.  In any event, probable cause is not dependent upon definitive proof of  every element of an offense, see Holmes, 321 F.3d at 1069, as is required to obtain a conviction.

Alternatively, the court finds that the facts which give rise to arguable probable cause for a violation of § 841(a)(1), arising solely from the July 16 drug transaction, are inextricably intertwined with the § 841(a)(1) charge outlined in the criminal complaint, such that Jointer's arrest arguably is valid pursuant to the "closely related offense"

47

principle.  Rambo, 789 F.2d at 1294 ("Where a defendant is arrested for the wrong offense, the arrest is still valid if probable cause existed to arrest the defendant for a closely related offense.").  Stated differently, at the very least, the court finds that the facts in this case would have justified a reasonable officer's belief that he or she had arguable probable cause to arrest Jointer for distributing and/or possessing with intent to distribute five grams of cocaine base on July 16, 2003.

In sum, the court finds that Conway and Wingard had a right to be in Jointer's residence because they had a search warrant for 3610 Castle Ridge Road, the premises where Jointer was arrested.  There also is sufficient evidence demonstrating that, at the time of Jointer's arrest, Conway and Wingard had arguable probable cause to believe that Jointer was guilty of possessing with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1).  Measured by the arguable probable cause standard, the court finds that Conway and Wingard are entitled to qualified immunity from suit on Jointer's claim that Jointer's warrantless arrest violated the Fourth Amendment.

(c)  Jointer's Federal Prosecution

The Fourth Amendment protects individuals from malicious prosecutions.  See Wood v. Kesler, 323 F.3d 872, 881 (11th Cir. 2003) ("Our Court has identified malicious prosecution as a violation of the Fourth Amendment and a viable constitutional tort cognizable under § 1983."); Uboh v. Reno, 141 F.3d 1000, 1002-03 (11th Cir. 1998)

48

(addressing § 1983 malicious prosecution claims).  A Fourth Amendment malicious

prosecution claim requires a plaintiff to prove "a violation of his Fourth Amendment right

to be free from unreasonable *seizures*, in addition to the elements of the common law tort

of malicious prosecution."[21]  Wood, 323 F.3d at 881.  In the context of qualified

immunity, the court's finding that arguable probable cause existed for Jointer's arrest on

July 25, 2003, requires a finding that arguable probable cause existed for the prosecution

of Jointer.  See Smith v. Deering, 880 F. Supp. 816, 835 (S.D. Ga. 1994), aff'd without

op., 71 F.3d 883 (11th Cir. 1995).  Accordingly, Conway and Wingard are entitled to

qualified immunity on Plaintiffs' Fourth Amendment malicious prosecution claim.


   (d)  Jointer's Warrant Arrest on January 15, 2004 and the State Prosecution

   Asserting their entitlement to qualified immunity, Conway and Wingard have

moved for summary judgment on Plaintiffs' Fourth Amendment claim as to the events

surrounding Jointer's arrest on January 15, 2004, and his subsequent state prosecution

arising from the same facts presented in the criminal complaint which was dismissed by a

─────────────────

   [21] Under Alabama law, the common law tort of malicious prosecution requires a
plaintiff to show the following:  "(1) a prior judicial proceeding was instituted by the
defendant . . .; (2) the defendant acted without probable cause in the prior proceeding; (3)
the defendant acted with malice in instituting the prior proceeding; (4) the prior
proceeding ended in favor of the plaintiff; and (5) the plaintiff was damaged."  U.S. Steel,
LLC v. Tieco, Inc., 261 F.3d 1275, 1289-1290 (11th Cir. 2001) (referring to Alabama law
to determine the elements of a malicious prosecution action under § 1983); see also
Wood, 323 F.3d at 882.

federal magistrate judge.  This claim is embodied in the count in Plaintiffs' Second

Amended Complaint, titled "Second Federal Cause of Action," and contains averments of

excessive force, lack of probable cause, and retaliation.  (2nd Am. Compl. ¶¶ 31-34.)


(i)  Abandonment of Claims

As an initial matter, the court finds that Plaintiffs have abandoned the Fourth

Amendment assertions in their Second Federal Cause of Action.  Plaintiffs' discussion of

the "search and seizure" constitutional claims consists of little more than two pages of

double-spaced type, almost half of which is devoted to a recitation of general principles

of qualified immunity law.  (See Pls. Resp. at 5-7 (Doc. No. 59).)  In their cursory

analysis, Plaintiffs reference only the arrest and search warrants pertaining to the events

which took place on July 25, 2003.  There is no mention of Jointer's subsequent arrest

and prosecution in state court or any other event occurring after July 25, 2003.  It simply

is not the court's function to define a plaintiff's claims and to comb the record in search

of evidence to support abstract claims raised in a complaint, but not argued during the

summary judgment proceedings.  Cf. Resolution Trust Corp. v. Dunmar Corp., 43 F.3d

587, 599 (11th Cir. 1995) ("[t]here is no burden upon the district court to distill every

potential argument that could be made based upon the materials before it on summary

judgment"; "grounds alleged in the complaint but not relied upon in summary judgment

are deemed abandoned").  Although the court is not obligated *sua sponte* to argue any

points for Plaintiffs, the court has done so to a limited extent in order to demonstrate the lack of merit of the claims.

(ii)  Conway

Plaintiffs bring their claims in the Second Federal Cause of Action against Conway and Wingard.  As to Conway, however, Plaintiffs have not submitted any evidence to support their averment that Conway was involved in the arrest or even was present at the scene of the arrest on January 15, 2004.  (2nd Am. Compl. ¶¶ 31-33.) Although Plaintiffs indicate that Jointer's arrest was effected by multiple law enforcement officers, Jointer mentions only Wingard in connection with the events surrounding his arrest on January 15, 2004.  (Jointer Aff. at 7 (unnumbered page) (Ex. A to Doc. No. 59)); (see also Pls. Ex. D (Jointer's Verified Notice of Claim ¶ 4).)  Other evidence, namely the MPD offense report, affirmatively states that Wingard and Corporal D. D.

Alexander were the officers who arrested Jointer.[22]  The court, thus, finds that Jointer has

not asserted any basis for liability to be imposed upon Conway as a result of this claim.

Conway, therefore, is entitled to qualified immunity on the ground that there is no

evidence of a causal connection between Conway's actions and Jointer's allegedly illegal

arrest.[23]  See Williams, 689 F.2d at 1383 ("[S]ection 1983 plainly requires . . . a causal

connection between the Constitutional deprivation and the defendant's acts or

omissions.").

---

[22] The court notes that the MPD offense report is admissible pursuant to Rule
803(8)(c) of the Federal Rules of Evidence which expressly excludes from the hearsay
definition public records and reports "resulting from an investigation made pursuant to
authority granted by law."  Fed. R. Evid. 803(8)(C).  Because police officers are charged
with a legal duty to conduct criminal investigations in their respective jurisdictions, an
officer's report summarizing his or her law enforcement activities is one type of report
the reliability of which is presumed and, is, thus, admissible under Rule 803(8)(c).  See,
e.g., Clark v. Clabaugh, 20 F.3d 1290, 1294 (3rd Cir. 1994) (police report, "which was
authored by officers charged with a legal duty and authorized to conduct the
investigation, is presumed admissible under Rule 803(8)(C)"); U.S. v. Smith, 521 F.2d
957, 968 n.24 (D.C. Cir. 1975) (observing that admissibility of police reports is
appropriate under Rule 803(8)(C)); Melridge, Inc. v. Heublein, 125 B.R. 825, 829 (D. Or.
1991) (domestic and foreign police reports admissible under 803(8)(C).  Furthermore, the
court observes that police reports "contain inherent indicia of trust-worthiness," and are
presumed admissible, as well as all "factual findings" contained within the report, unless
they are proven to be untrustworthy.  Clark, 20 F.3d at 1294; Fed. R. Evid. 803(8)(C).
Jointer has not argued or suggested that the offense report is not reliable.  See Moss v.
Ole South Real Estate, Inc., 933 F.2d 1300, 1304 (5th Cir. 1991) (holding that party
opposing the admission of the report has the burden of proving the report's
untrustworthiness).

[23] To the extent, if any, that Conway was involved in the events surrounding and
postdating Jointer's arrest on January 15, 2004, the court's conclusions below apply
equally to Conway.

iii.  The Alleged Use of Excessive Force
in Effecting Jointer's Arrest on January 15, 2004

As stated, Plaintiffs' Second Federal Cause of Action also includes a Fourth Amendment excessive force claim in connection with Jointer's arrest on January 15, 2004.  The only evidence in the record which arguably could be deemed supportive of an excessive force claim is Jointer's attestation that he "was forced into handcuffs," presumably by Wingard.  (Jointer Aff. at 7 (unnumbered page) (Ex. A to Doc. No. 59).)

The Fourth Amendment prohibits law enforcement officers from using excessive force in effecting an arrest of a suspect.  See Graham v. Connor, 490 U.S. 386, 394 (1989) ("All claims that law enforcement officers have used excessive force – deadly or not – in the course of an arrest . . . or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard[.]").  It is inevitable, however, that "some use of force by a police officer when making a custodial arrest is necessary," and, in this circuit, is "altogether lawful, regardless of the severity of the alleged offense." Durruthy, 351 F.3d at 1094.  When the force to which the arrestee is subjected is de minimus, the force does not violate the Fourth Amendment's proscription against excessive force.  See id. ("'the application of de minimis force, without more, will not support a claim for excessive force in violation of the Fourth Amendment'") (quoting Nolin v. Isbell, 207 F.3d 1253, 1257 (11th Cir. 2000)).  In Durruthy, in which the Eleventh Circuit analyzed a Fourth Amendment excessive force claim in connection with an arrest, the Eleventh Circuit concluded that, even if the law enforcement official's

53

actions of "forcing [the plaintiff] down to the ground and placing him in handcuffs--was unnecessary, plainly it was not unlawful.  The amount of force used was *de minimus*." Id.

Clearly, pursuant to Durruthy, *supra*, Jointer's attestation that he was "forced into handcuffs" is insufficient to support a Fourth Amendment excessive force claim.  Jointer has never described the force nor presented evidence (or even argued) that he suffered any injuries as a result of being handcuffed.  Viewing the facts in the light most favorable to Jointer, the court finds that at best the force was *de minimis*.[24]  Id.; see also Gold v. City of Miami, 121 F.3d 1442, 1446 (11th Cir. 1997) (handcuff abrasions deemed *de minimis*).  Because Plaintiffs have failed to raise a genuine issue of material fact as to the existence of a Fourth Amendment excessive force violation, the court finds that Wingard is shielded by qualified immunity.  See Saucier, 533 U.S. at 201 ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.").  Accordingly, the court finds that Wingard is entitled to summary judgment on Jointer's Fourth Amendment excessive force claim.

---

[24] In the Second Amended Complaint, Plaintiffs also allege that, in effecting Jointer's arrest on January 14, 2004, Conway and Wingard "brandish[ed] weapons under Gestapo like pretenses."   (2nd Am. Compl. ¶ 31.)  Jointer's affidavit, however, does not support the allegation, nor is there evidence that Jointer suffered any injury, *de minumus* or otherwise, as a result of the manner in which he was arrested.

54

iv.  The Alleged Absence of Probable Cause
for Jointer's Arrest and Prosecution in State Court

Plaintiffs also allege that, on January 15, 2004, Jointer was arrested and state charges were initiated against him, all "without probable cause."  (2nd Am. Compl. ¶ 31.) The state charge is premised on the same conduct which formed the basis of the federal criminal complaint which Magistrate Judge McPherson dismissed.[25]  Consequently, the court finds that its conclusion, previously reached herein, that arguable probable cause existed to arrest Jointer for a cocaine distribution charge pertaining to Jointer's involvement in the July 16, 2003, drug transaction equally supports a finding of arguable probable cause for Jointer's January 15, 2004, arrest for a state charge for trafficking in cocaine.

Moreover, on January 15, 2004, when Wingard arrested Jointer on the state charge, Wingard possessed additional information connecting Jointer to the cocaine seized from 3610 Castle Ridge Road which was unknown to the officers on July 25, 2003, when Wingard effected Jointer's warrantless arrest.  See Beck, 379 U.S. at 91

---

[25] The court notes that the record establishes that Wingard arrested Jointer pursuant to "a felony warrant . . . for Trafficking in Cocaine."  (MPD Offense Report, ¶ 20 (Ex. 3 to Doc. No. 56).)  Although Jointer asserts in his Second Amended Complaint that the warrant was not "legitimate," Jointer has presented no argument or evidence to that effect in opposing the present summary judgment motion.  The warrant itself is not part of the record for examination by the court, and there has been no argument or evidence presented by Jointer to support a finding that "a reasonably well-trained officer [applying for a warrant] would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant."  Malley, 475 U.S. at 345 (footnote omitted).

(Probable cause to arrest "depends upon whether, at the moment the arrest was made, the officers had probable cause to make it."). The facts known were as follows. First, by January 15, 2004, Wingard had acquired information that Jointer was a resident, not merely a visitor, of the dwelling at 3610 Castle Ridge Road. 3610 Castle Ridge Road, as discussed, was suspected of being used as a stash house for large quantities of cocaine, given the officers' knowledge of the use of the premises during two drug transactions and the statement of "Eric LNU" concerning the availability of ounce and kilogram quantities from his source, and was the subject of a search warrant for contraband. Second, Jointer had been identified as accompanying "Eric LNU" when Conway purchased five grams of cocaine base on July 16, 2003, and law enforcement officers observed Jointer briefly enter 3610 Castle Ridge Road, just prior to the delivery of the five grams of crack cocaine to Conway.

Third, Jointer was the sole resident at 3610 Castle Ridge Road on the day that law enforcement officers obtained a substantial amount of cocaine from two of the three bedrooms in the residence. Fourth, some of the cocaine was found in a stereo speaker in a bedroom Jointer used as a "studio" and which contained equipment for the operation of the business Jointer co-owned with his brother, such that the court finds that it would be reasonable for an officer to infer that Jointer had knowledge of, and exercised dominion and control over, the cocaine found. Fifth, five firearms were seized from 3610 Castle Ridge Road, and some of the weapons were in a common hallway in the apartment.

Firearms frequently are associated with illegal drug activity.  See U.S. v. Grogins, 163 F.3d 795, 799 (4th Cir. 1998) (stating that firearms and illegal drugs are tightly connected).  Sixth, the officers seized $2185.00 in cash from which the court finds that a reasonable officer could have concluded that the cash constituted drug proceeds, particularly given the distribution quantities of cocaine seized from the residence.

These facts, in the court's opinion, readily establish actual probable cause for Jointer's arrest for a drug trafficking offense.  The existence of actual probable cause forecloses Plaintiffs' § 1983 Fourth Amendment claims for false arrest and malicious prosecution.[26]  Wood, 323 F.3d at 881; see also Marx v. Gumbinner, 905 F.2d 1503, 1505-06 (11th Cir. 1990) ("The existence of probable cause . . . is an absolute bar to a section 1983 action for false arrest.").  Moreover, as pointed out by the Eleventh Circuit in Wood, supra, where an officer has actual probable cause for an arrest, he or she obviously also has arguable probable cause, "which is all that is required for an arresting officer to be entitled to qualified immunity from a Fourth Amendment claim."  323 F.3d at 881 n.13.  The existence of arguable probable cause, therefore, provides an alternative basis for finding that Wingard is entitled to qualified immunity.

---

[26] The court notes also that there is no evidence in the record as to whether or not the state prosecution has concluded, and, if it has, whether the prosecution terminated in Jointer's favor, as required for Jointer to establish a Fourth Amendment malicious prosecution claim.  See U.S. Steel, LLC, 261 F.3d at 1289-90.

Plaintiffs also contend that Jointer's state prosecution was initiated as a retaliatory act to punish Jointer because he prevailed in obtaining a dismissal of the criminal complaint in federal court and because Jointer filed the instant civil action against Conway and Wingard.  (2nd Am. Compl. ¶ 31.)  Plaintiffs bring their retaliation claim pursuant to the Fourth Amendment.  That claim, however, fails as a matter of law because there "is no retaliation claim under the Fourth Amendment separate and distinct from [Plaintiffs'] malicious prosecution and false arrest claims."  Wood, 323 F.3d at 883. Regardless of Conway's and/or Wingard's motivation, whether retaliatory or otherwise, a Fourth Amendment malicious prosecution claim cannot lie against Conway and Wingard in their individual capacities given the presence of actual and/or arguable probable cause. See id.  Summary judgment, therefore, is due to be entered in favor of Conway and Wingard on Plaintiffs' Fourth Amendment retaliatory prosecution claim on the basis of qualified immunity.

### 3.  Fourteenth Amendment: Equal Protection Clause and Unlawful Selective Enforcement (Count 3)

In Count 3, titled "Third Federal Cause of Action," Plaintiffs bring a "Fourteenth Amendment" claim, alleging that

> the actions of defendants Wingard and Conway, in entering into the plaintiffs' property without their consent, without a warrant and/or other legal authority, brandishing weapons under Gestapo like pretenses, was a result of the use of racial profiling and overt racial discriminatory

58

> investigatory practices, pursuant to [a] custom and policy of the [MPD] and
> the City of Montgomery.  Plaintiffs aver that the police officers acted the
> way they did because of the plaintiffs' race.

(2nd Am. Compl. ¶ 35.)  Plaintiffs also contend that Conway and Wingard violated Plaintiffs' Fourteenth Amendment equal protection rights (see id. ¶ 36), and, based on the foregoing allegations, the court understands Plaintiffs to be alleging that Conway and Wingard enforced the criminal drug-trafficking laws in a selective manner by investigating, searching, and arresting African-Americans, but not Caucasians, through their use of racial profiling.  Count 3, thus, combines a custom and policy claim against the City of Montgomery with individual claims against Conway and Wingard for violations of the Fourteenth Amendment's Equal Protection Clause.  This subsection addresses the claims of Conway and Wingard, as resolution of their claims is dispositive of the custom and policy claim against the City.

Defendants assert that Plaintiffs' claim under the Equal Protection Clause of the Fourteenth Amendment fails because there are no facts alleged, and no evidence in the record, demonstrating that Plaintiffs were treated differently than similarly-situated groups or that racial animus motivated Conway's and Wingard's actions.  (Defs. Br. at 5-7 (Doc. No. 57).)  They contend that summary judgment is due to be entered in their favor because there is an absence of evidence, and, thus, no genuine issue of material fact, that they engaged in race discrimination in the investigation leading to Jointer's arrest.  (See id.)

In support of their claim and in opposition of Defendants' motion for summary judgment, Plaintiffs have submitted a copy of a "draft" civil complaint which apparently was filed in the Circuit Court of Montgomery County, Alabama, in 2004. Therein, an African-American citizen alleges that "3 or 4" unidentified Caucasian MPD officers burst into his home, were "rough and rude," and handcuffed him, without allowing him to dress, but yet never charged him with a crime. (Pls. Ex. C (state court complaint ¶¶ 6, 7).) The plaintiff alleges that the actions of the defendant-officers "were racially motivated, and [were] part of a pattern of conduct to treat minority suspects more harshly . . . than other suspects," in violation of the Fourteenth Amendment right to equal protection. (Id. ¶ 21.) Plaintiffs contend that "there is a staunch similarity between the allegations of [that plaintiff] and [their] allegations, particularly with regard[] to the invasion of the parties' premises by police officers of the City of Montgomery," so as to demonstrate their entitlement to proceed to trial on their equal protection claim. (Pls. Br. at 7-8 (Doc. No. 59).) For the reasons to follow, the court disagrees with Plaintiffs.

The Equal Protection Clause of the Fourteenth Amendment "prohibits selective enforcement of the law based on considerations such as race." Wren, 517 U.S. at 813. "'Ordinary equal protection standards'" also govern claims, such as Plaintiffs, that law enforcement officers engaged in racial profiling and other racially discriminatory enforcement tactics. U.S. v. Barlow, 310 F.3d 1007, 1010 (7th Cir. 2002) (quoting U.S. v. Armstrong, 517 U.S. 456, 465 (1996)). To prevail on their selective enforcement claim,

60

Plaintiffs must present evidence that individuals of a different race could have been subjected to a search of their premises and/or arrested for the same crime, but were not. Swint v City of Wadley, Ala., 51 F.3d 988, 1000 (11th Cir. 1995) ("Absent some evidence of racially disproportionate arrests compared to the actual incidence of violations by race, there is no basis for inferring racially selective law enforcement."); see also U.S. v. Bell, 86 F.3d 820, 823 (8th Cir. 1996) ("To establish discriminatory effect in a race case, the claimant must show people of another race violated the law and the law was not enforced against them."); U.S. v. Duque-Nava, 315 F. Supp.2d 1144, 1152 n.15 (D. Kan. 2004) (to prove Fourteenth Amendment selective enforcement claim, arrestee must "make a credible showing that a similarly-situated individual of another race could have been, but was not, arrested or referred for federal prosecution for the offense for which the defendant was arrested and referred").

As an initial matter, the allegations in the state court complaint, as well as the attached letters written by that plaintiff's counsel in which counsel summarizes his client's claims, are not evidence.[27]  Overlooking for the moment these evidentiary shortcomings, Plaintiffs are attempting to prove their selective enforcement claim by arguing that another individual of the same race was subjected to harsh treatment and

---

[27] The court observes that Defendants have submitted unrefuted evidence that the circuit court granted summary judgment in favor of the defendants in that litigation, *albeit* without an opinion and on the basis of § 6-5-338 of the Alabama Code.  (See Ex. to Doc. No. 60.)

61

harassed by MPD officers, but ultimately was not charged with any law violation.[28] However, even if Plaintiffs had submitted evidence that another member of their racial group had been subjected to alleged similar treatment by the MPD, such evidence would be insufficient to establish a Fourteenth Amendment selective enforcement claim.  To state an equal protection claim, Plaintiffs must come forward with evidence that MPD officers chose not to conduct drug investigations, searches and arrests of Caucasians to whom Plaintiffs are similarly situated.  In short, there simply is no evidence that Conway and Wingard used race as a basis to commence their criminal investigation which resulted in their suspicion that Jointer was involved in the distribution of illicit drugs.

Plaintiffs have fallen far short of satisfying their burden on summary judgment of establishing a genuine issue of material fact as to the existence of an equal protection violation.  Rule 56(e) of the Federal Rules of Civil Procedure requires Plaintiffs to "set forth specific facts showing there is a genuine issue for trial."  Fed. R. Civ. P. 56(e) (emphasis added).  Conclusory statements, speculation and hunches, however, are insufficient to avoid summary judgment.  See Rainey v. Vinson Guard Serv., Inc., 120 F.3d 1192, 1198 (11th Cir. 1997) ("Summary judgment cannot be avoided . . . based on hunches unsupported with significant probative evidence.").  Based on the complete absence of evidence in the record, the court finds that no reasonable jury could conclude

---

[28] The court notes that it agrees with Defendants that the similarities between that case, as alleged in the complaint, and this case, are dubious.  (See Defs. Br. at 4 (Doc. No. 60).)

62

that Plaintiffs were singled out because of their race and treated differently than similarly-situated individuals who are not African-Americans.  Accordingly, the court finds that Conway and Wingard are entitled to summary judgment on Plaintiffs' selective enforcement equal protection claim, as there is no evidence of a constitutional violation. Again, the absence of a viable constitutional claim entitles Conway and Wingard to qualified immunity in their personal capacities, as the threshold issue in the qualified immunity context is whether Plaintiffs have presented a violation of a constitutional right. See Saucier, 533 U.S. at 201.


### B.  § 1983 Fourteenth Amendment Equal Protection Claim against The City of Montgomery

Plaintiffs' § 1983 claim against the City of Montgomery is premised on its alleged custom or policy of racial profiling, in violation of the Equal Protection Clause of the Fourteenth Amendment, as set out above.[29]  Municipal liability is foreclosed on Plaintiffs'

---

[29] Plaintiffs intersperse their custom and policy allegations against the City of Montgomery in Counts 1 and 3.  The averments in Count 3 are set forth above.  In Count 1, Plaintiffs similarly allege that the City of Montgomery "has a policy and custom of subjecting African-Americans in Montgomery, to racially discriminatory practices in the investigation and apprehension of suspects believed to have engaged in unlawful activities."  (2nd Am. Compl. ¶ 28.)  Plaintiffs continue, "Pursuant to said policy and custom, Montgomery police officers enter houses within African-American neighborhoods unlawfully; they make traffic stops unlawfully engaging in racial profiling; with no similar surveillance and patrol of predominantly white neighborhoods in East Montgomery."  (Id.)

Fourteenth Amendment claim against the City because the court has concluded that no underlying equal protection violation was committed by Conway and Wingard as to the events at issue in this case.  See Rooney v. Watson, 101 F.3d 1378, 1380 (11th Cir. 1996) ("An inquiry into a governmental entity's custom or policy is relevant only when a constitutional deprivation has occurred."); Vineyard v. County of Murray, Ga., 990 F.2d 1207, 1211 (11th Cir. 1993) ("Only when it is clear that a violation of specific rights has occurred can the question of § 1983 municipal liability for the injury arise.").


### C.  Supplemental State Law Claims

Plaintiffs also allege four supplemental state law claims for municipal tort liability, in violation of § 11-47-190 of the Alabama Code (2nd Am. Compl. ¶¶ 39-40); false imprisonment (id. ¶¶ 41-43); assault and battery (id. ¶¶ 44-46); and wantonness.  (Id. ¶¶ 45-46.)  Having dismissed the federal constitutional claims, the court in its discretion declines supplemental jurisdiction over these remaining state law claims.  See 28 U.S.C. § 1367(c)(3); see also McCulloch v. PNC Bank, Inc., 298 F.3d 1217, 1227 (11th Cir. 2002).  Defendants' motion for summary judgment on the state law claims, therefore, is due to be denied as moot, and the state law claims are due to be dismissed without prejudice.  See 28 U.S.C. § 1367(c)(3) & (d).

## VI. ORDER

Accordingly, it is CONSIDERED and ORDERED as follows:

(1) Defendants' motion for summary judgment (Doc. No. 56) be and the same is hereby GRANTED to the extent that Plaintiffs' 42 U.S.C. § 1983 constitutional claims in Counts I, II and III of the Second Amended Complaint are hereby DISMISSED with prejudice;

(2) Defendants' motion for summary judgment be and the same is hereby DENIED as moot on Plaintiffs' supplemental state law claims in the remaining counts and said state law claims are hereby DISMISSED without prejudice pursuant to 28 U.S.C. § 1367(c)(3); and

(3) all pending motions be and the same are hereby DENIED as moot.

A judgment in accordance with this Memorandum Opinion and Order shall be entered separately.

DONE this 28th day of March, 2006.

/s/ Ira DeMent
SENIOR UNITED STATES DISTRICT JUDGE